**STATE of Missouri, Respondent,**

v.

**Timothy Paul CABLE, Appellant.**

**No. 22710.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 13, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied Sept. 24, 1999.

Application for Transfer Denied
Oct. 26, 1999.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found Appellant guilty of murder in the first degree. § 565.020.[1] The trial court sentenced Appellant to imprisonment for life without eligibility for probation or parole.[2] *Id.* Appellant's sole claim of error is:

> "The trial court erred in overruling defense counsel's motion for mistrial during the first recess of voir dire, because this ruling violated Tim's rights to due process of law and a fair trial before a fair and impartial jury, United States Constitution, Amendments V, VI and XIV, Missouri Constitution, Article I, Sections 10 and 18(a); Rule 28.02(f), which assigns as error the failure to give any required instruction; and MAI–CR3d 300.04, Notes on Use 2, in that the trial court failed to read the recess instruction, MAI–CR3d 300.04 to the jury before the first recess, defense counsel objected and moved for a mistrial during the recess before the jury had returned to the courtroom, defense counsel overheard venirepersons discussing the case during that recess, and when the panel was examined on outside influences, they did not admit to the discussion overheard by defense counsel."

The events whence the claim of error arose began during voir dire when the trial court said:

> "Let me inquire of the members of the jury panel at this point if there's a need to have a restroom break at this time. If you're in that situation and you need a break for that reason would you raise your hand so I have some ... idea if we need to take a short break in that regard. Well, given the numbers, what I'm going to do is we'll just have a recess and ... take care of that and reassemble downstairs so we can come back up and just as soon as possible then but, Mr. Bailiff ... if you'll take charge of the jury panel for that purpose we'll be in recess then."

The venire thereupon departed the courtroom. During the recess, the following exchange occurred at the bench:

---

1. References to statutes are to RSMo 1994.

2. Before trial, the trial court found Appellant a prior offender. § 558.016.2. The State waived the death penalty.

"[Defense Counsel]: Your Honor, I stepped outside to have a cigarette standing over to one side by myself and I hear a group of jurors saying so this is why we wouldn't have heard about this or something to that effect and then I hear them mention the death penalty. I came away immediately, left the area but I was convinced that the jury was discussing this case. And I do not know, did you admonish them before they left the courtroom?

THE COURT: Well, I don't believe I gave the cautionary instruction as they left. I think that's correct, I did not.

[Defense Counsel]: Well, then we would ask that this panel be stricken, Your Honor."

The prosecutor opposed Defense Counsel's request, whereupon a discussion ensued between the trial court and counsel about how to proceed. During the discussion, Defense Counsel acknowledged she could not identify any venire member involved in the incident, as she "was being very careful not to interact with them at all and ... only heard and left immediately."

After further dialogue, the trial court assembled the venire in the courtroom, read MAI–CR 3d 300.04.1, then recessed for lunch. During that recess, the trial court and counsel had additional discussion and looked at relevant case law. Near the end of the confabulation, the trial court denied Defense Counsel's "motion to strike the panel."

When the venire reassembled after lunch, the trial court asked whether any member had difficulty complying with MAI–CR 3d 300.04.1 during the recess. No venire member responded. Then, this:

"THE COURT: ... Let me also state to you in the first recess that we took which was a short restroom break, the Court, myself, did not read to you that cautionary instruction. I need to also ask you if during that period of time, that first recess that we took in the case,

if any of you had occasion to discuss with others this case or to view or listen to any publicity concerning the case? Yes, sir, what is your name?

PROSPECTIVE JUROR BORDERS: Borders.

THE COURT: Let me see here, sir, if I can find you on the list. Roger Borders, is that correct?

PROSPECTIVE JUROR BORDERS: Yes.

THE COURT: For now I just want to make note of your name, that's all I'm asking at this point. Anyone else that had occasion to discuss the case or otherwise have a discussion concerning the case? All right, I don't see any other hands."

Voir dire thereupon resumed. During that procedure, several venire members, including Borders, were questioned individually, outside the presence of the others. Borders recounted:

"One of the potential jurors which I thought was like myself, a potential juror, asked if this was a local case. I said, no, I think I heard something maybe on the radio this morning it was to be a change of venue from Jasper County. I said I think that's what this is."

Borders revealed the person to whom he spoke was a man. Asked whether the man was "sitting in the room during the jury selection process," Borders replied, "No, he was downstairs." Borders added that the conversation occurred "[c]lose to the coffee pot." Borders discussed nothing else with the man. Borders's sole knowledge about the case was that "it was a change of venue from Jasper County." He learned that from a radio broadcast that morning as he was "pulling into the parking lot."

Before voir dire ended, Defense Counsel renewed the motion to "quash the panel." Defense Counsel expressed concern that "there are people who discussed this situation and now that they've been advised and

have been asked the question aren't answering truthfully."

The trial court denied the motion.

Neither side challenged Borders for cause or peremptorily, hence he served on the jury.

◼ In *State v. Barajas*, 930 S.W.2d 74, 75 (Mo.App. W.D.1996), as in the instant case, the trial court declared a recess during voir dire so members of the venire could go to the restroom. In *Barajas*, as here, the trial court forgot to read MAI–CR 3d 300.04 before the recess. *Id.* In *Barajas*, as here, the accused's lawyer did not call the oversight to the trial court's attention before the venire departed the courtroom. *Id.* The appellate court held:

> "A timely objection should have been registered with the court before the panel recessed. A timely objection would have allowed the trial court to take corrective action.... By failing to remind the court to give the instruction when it was apparent that the panel was going to be excused without the reading of the instruction, the defendant waived his right to appellate review."

*Id.* at [1] (citations omitted).

Despite holding the accused waived the claim of error, the appellate court in *Barajas* went on to point out that the accused's lawyer declined to question the venire in an effort to establish prejudice from the trial court's omission, and the record revealed none. *Id.* at [2].

Relying on *Barajas*, the State maintains Appellant waived the error when Defense Counsel voiced no objection to the trial court's failure to read MAI–CR 3d 300.04 before the venire departed the courtroom.

Appellant insists Defense Counsel objected at the earliest possible opportunity, as the trial court took the recess "somewhat suddenly."

This court holds Defense Counsel had ample notice that the trial court was preparing to declare a recess. The trial court asked for a show of hands to learn how many venire members needed a "restroom break" and, after seeing the number, announced one would be taken. The trial court directed the bailiff to take charge of the venire. Those remarks should have alerted Defense Counsel that the venire was about to leave the courtroom. Indeed, as underscored by the State, during the debate in the trial court, Defense Counsel conceded: "I wish we had caught it, we made a mistake.... We didn't catch it and then we heard this stuff and we came up and we realized we've got a problem."

Consistent with *Barajas*, this court holds Defense Counsel's silence when it became obvious a recess was imminent waived the error.

◼ Nonetheless, as did the appellate court in *Barajas*, this court has examined the record to determine whether Appellant was prejudiced. That is consistent with this court's approach in *State v. White*, 880 S.W.2d 624, 625 (Mo.App. S.D.1994), where the trial court failed to read MAI–CR 3d 300.04 before a recess following voir dire and the accused's lawyer registered no objection. This court concluded nothing in the record indicated anything occurred to any venire member during the recess which could have prejudiced the accused. *Id.*

Appellant proclaims he was prejudiced because "this panel had in fact discussed the case at the recess ... speculating about the death penalty." However, when the trial court asked the venire about the matter, only Borders responded. As reported earlier in this opinion, Borders was thereafter questioned individually, and his answers evidently convinced Defense Counsel (and Appellant) that he—Borders—had formed no opinion adverse to Appellant, as Appellant did not challenge Borders for cause or peremptorily.[3]

3. Appellant's brief asserts Borders's conversation with the unidentified man was not the

conversation Defense Counsel overheard. That conclusion appears sound, as Defense

Appellant's claim of prejudice is thus reduced to a hypothesis that (a) the individuals overheard by Defense Counsel were members of the venire for Appellant's trial, and (b) those individuals refused to admit the conversation when questioned by the trial court.

If the individuals Defense Counsel overheard were indeed members of Appellant's venire, Defense Counsel's professed inability to identify them is puzzling, as voir dire covers 338 pages of the transcript (including discussions outside the presence of the venire), hence Defense Counsel had ample opportunity to observe the venire and identify the conversants.[4]

The explanation may be that the conversation Defense Counsel overheard was "in front of the courthouse," whereas the trial court directed the bailiff to take the venire to "the jury assembly area." From those circumstances, the trial court could have inferred the conversation reported by Defense Counsel was not among members of Appellant's venire. That inference is buttressed by the fact that the instant case did not involve the death penalty,[5] yet the conversants Defense Counsel overheard mentioned the death penalty.

Be that as it may, the only possible way Appellant could have been harmed by the conversation overheard by Defense Counsel would have been that one or more of the conversants ended up on Appellant's jury. Nothing in the record suggests that occurred. To conclude otherwise would require this court to assume one or more members of Appellant's venire participated in the conversation reported by Defense Counsel and thereafter remained silent when the trial court inquired about the matter. This court is not compelled to

assume such willful concealment and shall not. Judgment affirmed.

PARRISH and SHRUM, JJ., concur.

---

Counsel was outside smoking, while Borders was "downstairs" near the coffee pot.

**4.** At one point while the issue was under debate, Defense Counsel told the trial court: "I do recognize one of them that was in the

group...." Yet, Defense Counsel never told the trial court who that individual was.

